FILED CLERK

2002 OCT 29  P 8: 47

U.S. DISTRICT COURT
DISTRICT OF UTAH

Kenneth B. Black (#5588)
David L. Mortensen (#8242)
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111-4904
Telephone: (801) 328-3131

Attorneys for Defendant/Counterclaimant-Intervenor
Generation Capital Associates, L.P.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| POWERBALL INTERNATIONAL, INC., a Utah corporation, | **MEMORANDUM IN SUPPORT OF GENERATION CAPITAL ASSOCIATES, L.P.'S MOTION FOR LEAVE TO INTERVENE AS OF RIGHT OR, IN THE ALTERNATIVE, PERMISSIVELY** |
| Plaintiff, | |
| vs. | |
| LEE MOGUL, an individual; DREW LANZETTA, an individual; THE INVESTOR ONLINE, a South Carolina partnership, | Civil No. 2:02 CV 1088 C |
| | The Honorable Tena Campbell |
| Defendants. | |

Generation Capital Associates, L.P. ("Generation Capital") hereby submits this memorandum in support of its motion for leave to intervene as of right or, in the alternative, permissively, as a defendant and counterclaimant in this action.

## INTRODUCTION

The central issue in this litigation is ownership and control of 100,000 shares of stock (the "Pledged Stock") in Powerball International, Inc. ("Powerball"). The Pledged Stock was

transferred by Powerball to The Investor Online ("TIO") pursuant to a contract between Powerball and TIO. Approximately four months later, TIO pledged the Pledged Stock to Generation Capital as collateral to secure repayment of a loan from Generation Capital to TIO. Pursuant to this loan, TIO delivered the Pledged Stock to an escrow agent to be held on behalf of Generation Capital. Generation Capital has, in fact, held the Pledged Stock and thus perfected its security interest in the Pledged Stock. Based upon TIO's recent default under its agreements with Generation Capital, Generation Capital has foreclosed on the Pledged Stock and now maintains an ownership interest in the Pledged Stock.

Almost a year after transferring the Pledged Stock to TIO, and seven months after the Pledged Stock was given as collateral to Generation Capital, Powerball seeks to take back its transfer of the Pledged Stock by rescinding its contract with TIO and enjoining any sale of the Pledged Stock. Powerball's complaint would effectively nullify Generation Capital's interest in the Pledged Stock, deprive Generation Capital of its opportunity to recover the amounts owed by TIO, and result in substantial and potentially unrecoverable financial injury to Generation Capital.

Inasmuch as Generation Capital's interest in the Pledged Stock is squarely at issue in this dispute, Generation Capital is entitled to intervene as of right as a defendant and counterclaimant under Rule 24(a)(2) of the Federal Rules of Civil Procedure. In the alternative, Generation Capital requests leave to intervene under Rule 24(b)(2) because its claims and defenses involve questions of law and fact that are common to Powerball's claims against TIO, and its intervention will neither unduly delay nor prejudice the original parties. Generation Capital's proposed answer and counterclaim is attached to its motion for leave to intervene as Exhibit "A".

## BACKGROUND

**Generation Capital Makes a Loan to The Investor Online**

1. Generation Capital is a limited partnership that provides financial assistance to individuals and corporations. (Affidavit of David A. Rapaport (the "Rapaport Affidavit") filed concurrently herewith at ¶ 3.)

2. As part of its finance activities, on or about March 7, 2002, Generation Capital and TIO entered into a Stock Loan Agreement. (A copy of the Stock Loan Agreement is attached to the Rapaport Affidavit as Exhibit 1.) Pursuant to the terms set forth in the Stock Loan Agreement, Generation Capital agreed to loan $32,000 to TIO. (Rapaport Affidavit at ¶ 4.)

3. The loan from Generation Capital to TIO was evidenced by a Stock Loan Agreement, a Secured Note and a Pledge Agreement (collectively the "Loan Documents"), which were properly executed by TIO and delivered to Generation Capital on February 26, 2002. (Copies of the Secured Note and the Pledge Agreement are attached to the Rapaport Affidavit as Exhibits 2 and 3, respectively.)

4. In the Loan Documents, TIO agreed to repay the loan from Generation Capital on November 1, 2002 as follows:

   a. On or before November 1, 2002, the Pledged Stock would be delivered to BNJ Capital Securities Corp ("BNJ Capital"), a transfer agent, to be properly sold pursuant to the Rule 144 restrictions applicable to the Pledged Stock.

   b. After the Pledged Stock was sold, BNJ Capital would deduct from the gross receipts an amount necessary to pay all commissions and costs of the sale.

   c. After paying the costs of the sale, BNJ Capital would pay the first $32,000 of the proceeds to Generation Capital.

d.      Finally, as consideration for and in order to induce Generation Capital to make the loan to TIO, TIO agreed that any remaining amount from the sale of the Pledged Stock would be divided equally between Generation Capital and TIO.

(Rapaport Affidavit at ¶ 6.)

**Generation Capital Takes and Perfects a Security Interest in the Pledged Stock**

5.      In order to secure TIO's repayment of the loan, TIO agreed in the Stock Loan Agreement to pledge the Pledged Stock as collateral. (*Id.* at 7.)

6.      In order to perfect Generation Capital's interest in the Pledged Stock, on or about March 7, 2002, TIO delivered to David A. Rapaport, as escrow agent for the loan, stock certificates for the Pledged Stock with a medallion signature guaranteed stock power (the "Stock Power"). (Rapaport Affidavit at ¶¶ 7-8.) On or about that same day, Generation Capital delivered through the escrow agent the $32,000 to TIO. (*Id.* at ¶ 8.)

**Generation Capital Made the Loan in Good Faith Without Knowledge of any of Powerball's Claims**

7.      When Generation Capital made the loan to TIO, it was unaware of any dispute, claim, or encumbrance concerning TIO's ownership of the Pledged Stock. (*Id.* at ¶ 9.) Indeed, in the Stock Loan Agreement, TIO represented that it had received the Pledged Stock as compensation for "consulting services" and that it owned the Pledged Stock "free and clear of any liens or encumbrances." (*See* Stock Loan Agreement at ¶ 6.)

8.      Based upon these and other similar representations, Generation Capital believed that TIO owned the Pledged Stock free and clear of any liens or encumbrances and made the requested loan unaware of any such claim, dispute, or contest regarding TIO's ownership of the Pledged Stock. (Rapaport Affidavit at ¶ 10.)

**This Litigation Has Prevented Generation Capital from Recovering the Sums TIO Owes**

9. On behalf of Generation Capital, the escrow agent caused the Pledged Stock to be tendered to Powerball's transfer agent, Colonial Stock Transfer ("Colonial"), in Salt Lake City, Utah, with instructions to facilitate the sale of a specified number of shares. However, Powerball instructed Colonial not to facilitate the sale of the Pledged Stock. Based upon Powerball's instruction, Colonial has refused to sell any of the Pledged Stock and pay the amounts owing to Generation Capital as required by the Loan Documents. (*Id.* at ¶ 11.)

10. On or about September 30, 2002, Powerball filed a Verified Complaint and Jury Demand in this case (the "Complaint"). In the Complaint, Powerball named TIO and its principals as defendants and sought, *inter alia,* to enjoin any sale of the Pledged Stock and to have the Pledged Stock canceled. (*See* Complaint at 17.)

11. As a result of the lawsuit commenced by Powerball against TIO and its principals, and as a result of TIO's default under the Loan Documents, Generation Capital has declared TIO's default and exercised foreclosed on the Pledged Stock. Accordingly, Generation Capital has (1) a clear and existing ownership interest in the Pledged Stock, and (2) a direct interest in the outcome of this litigation and, in particular, the relief Powerball seeks by way of its motions for a preliminary injunction and writ of attachment. (Rapaport Affidavit at ¶ 12.)

12. Because of the nature of the collateral (i.e., stock) and the volatility of the stock market, any delay in liquidating the Pledged Stock could result in a significant and potentially unrecoverable diminution in the value of the Pledged Stock. (*Id.* at ¶ 13.)

## ARGUMENT

### I. Generation Capital Satisfies the Requirements for Intervention as of Right.

Under Rule 24(a)(2), an applicant is entitled to intervene as of right if (i) the motion is "timely," (ii) the intervenor "claims an interest relating to the property or transaction which is the subject of the action," (iii) the intervenor's interest "may as a practical matter" be impaired or impeded if intervention is not allowed; and (iv) the intervenor's interest is not "adequately represented by existing parties." *Coalition of Arizona/New Mexico Counties v. Dep't of the Interior*, 100 F.3d 837, 840 (10th Cir. 1996). Generation Capital satisfies each of these requirements.

#### A. The Motion Is Timely.

For purposes of Rule 24, "[t]imeliness is to be determined from all the circumstances." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (citation omitted), *cert. denied*, 498 U.S. 1073 (1991). Courts particularly look at any delay in the intervenor's attempts to intervene after learning of its interest in the case and any potential prejudice that could result to the existing parties. *See Sanguine, Ltd. v. United States Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984).

Here, Generation Capital's motion is timely. Powerball's complaint was filed on September 30, 2002, less than a month ago. So, too, was its motion for a preliminary injunction. Powerball's motion for a writ of attachment was filed on October 16, 2002, less than two weeks ago. None of the Defendants has answered, no scheduling orders have been issued, a trial date has not been set, and none of the parties has conducted any discovery. Under these circumstances, intervention will not prejudice any of the existing parties. Conversely, denial of

Generation Capital's motion would greatly prejudice Generation Capital by eliminating its ability to protect its ownership interest in the Pledged Stock.

### B. Generation Capital Claims an Interest Relating to the Subject Matter of the Litigation.

In order to intervene as of right, the potential intervenor must have an "interest in the proceedings which is direct, substantial, and legally protectable." *City of Stillwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996) (internal quotation and marks omitted). This is a practical, fact-specific inquiry designed to allow courts to dispose of related claims efficiently "by involving as many apparently concerned persons as is compatible with efficiency and due process." *Coalition of Arizona/New Mexico Counties*, 100 F.3d at 841 (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). Here, Generation Capital has a direct, substantial, and legally protectable interest in this action.

As explained above, Generation Capital has a perfected and now-foreclosed security interest in the Pledged Stock, which is the property at interest in this litigation. Indeed, Generation Capital has a claim to a greater interest in the Pledged Stock than TIO, who has been named as a defendant. As set forth above, Generation Capital loaned $32,000 to TIO and took a security interest in the Pledged Stock. According to the Loan Documents, Generation Capital was to be paid from the proceeds of the sale of the Pledged Stock. Powerball now seeks to prevent the sale of any portion of the Pledged Stock and to have the certificates canceled. Powerball's remedy would deprive Generation Capital of its interest in the Pledged Stock, prevent it from recovering the amounts owed, and remove its principal remedy for TIO's default. Moreover, in light of the volatility of the stock market, any delay in liquidating the Pledged Stock may result in a significant and potentially unrecoverable diminution in the value of the

Pledged Stock. This direct economic interest in the outcome of the litigation warrants Generation Capital's intervention as a right. *See, e.g., Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (timber company's economic interests in Forest Service timber sales justified intervention as of right in action seeking to enjoin Forest Service from making such timber sales).

### C. This Action May as a Practical Matter Impair or Impede Generation Capital's Ability to Protect It's Interests.

The question of impairment is a practical inquiry in which "the court may consider any significant legal effect in the applicant's interest." *Natural Res. Def. Council, Inc. v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978). If the potential intervenor has an interest, and relief opposing such interest is sought and granted, "there can be little question that [the potential intervenor's] interest . . . would be affected." *Id.*

As a practical matter, the present action has already impaired Generation Capital's interest and may continue to. The preliminary injunction Powerball seeks would prevent the Pledged Stock from being liquidated. The injunction would potentially prevent Generation Capital from recovering the amounts owed by TIO. Indeed, in light of the volatility of the stock market, even a short delay in the liquidation of the Pledged Stock may cause Generation Capital to suffer substantial and potentially unrecoverable financial damages. Moreover, the remedy that Powerball seeks, i.e., cancellation of the stock certificates, would deprive Generation Capital of the only collateral securing its loan.

Finally, Powerball's actions and this litigation have already impaired Generation Capital's interests. Pursuant to the Loan Documents, the Pledged Stock was to be sold and Generation Capital paid from those proceeds. Accordingly, Generation Capital recently had the

Pledged Stock sent to Colonial with instructions that Colonial facilitate transfer of the Pledged Stock. However, Powerball has instructed Colonial not to transfer the shares. Based upon Powerball's instruction, Colonial has refused to transfer the shares. The result is that Generation Capital's recovery has already been impeded by Powerball's actions and its claims in this litigation threaten to perpetuate Generation Capital's injury.

### D.     Generation Capital's Interests Are Not Adequately Protected.

The United States Supreme Court has clearly held that the burden of showing inadequate protection "should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Indeed, the potential intervenor need not show that its interests are in fact not adequately protected, but simply that its interests may not be adequately represented. *See Natural Res. Def.*, 578 F.2d at 1345. As a result, a proposed intervenor "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." 7C Charles Alan Wright, et. al., Federal Practice and Procedure § 1909, at 319 (2d ed. 1986).

In this case, it is far from "clear" that TIO will adequately represent Generation Capital's interests. While TIO will likely defend against the claims and oppose the injunction, TIO can not adequately present Generation Capital's legal claims. In this case, Generation Capital was unaware of Powerball's claims against TIO when it made the loan to TIO and accepted the Pledged Stock as collateral. Because Generation Capital gave value and was unaware of any dispute over ownership of the Pledged Stock, Generation Capital is a bona fide and protected interest holder in the Pledged Stock. This fact-specific contention will be central to Generation Capital's defense and claim, and Generation Capital is uniquely situated to present it. TIO cannot, after all, fully present the facts regarding Generation Capital's knowledge and

understanding. Accordingly, TIO will be unable to adequately represent Generation Capital's interests in this matter.

## II.     Generation Capital Satisfies Rule 24(b)'s Permissive Intervention Requirements.

If the Court declines to grant intervention as of right, Generation Capital respectfully submits that the Court should grant it leave to intervene under Rule 24(b)(2). Under Rule 24(b)(2), the Court may permit any party to intervene if (i) the application is timely; (ii) the applicant's claim or defense has a question of law or fact in common with the main action; and (iii) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989), aff'd, 495 U.S. 82 (1990); *City of Stillwell*, 79 F.3d at 1043. Generation Capital clearly satisfies these three elements.

Initially, as explained above, Generation Capital's motion is timely and granting intervention at this point will not prejudice any of the parties. *See United States v. Jefferson County*, 720 F.2d 1511, 1516 (11th Cir. 1983) (holding that the timeliness standard for permissive intervention is the same as that for intervention as of right). Additionally, Generation Capital's claims and defenses involve the same questions of law and fact as those currently presented. Indeed, Generation Capital's claims and defenses will involve identical questions of law and fact as those presented in plaintiffs' complaint including, (1) whether TIO breached its contract with Powerball; (2) whether any such breach supports rescission of the contract; and (3) whether Powerball is entitled to an injunction preventing the sale of the Pledged Stock. These common issues are sufficient to support permissive intervention. *Michigan State AFL-CIO v. Miller*, 103 F.2d 1240, 1248 (6th Cir. 1997) (holding that to justify permissive intervention, the intervenor's defense need only share a single question of law or fact with the main action).

## CONCLUSION

For the reasons set forth above, Generation Capital respectfully requests that the Court grant its motion for leave to intervene, that it be added as a defendant and counterclaimant through the filing of its proposed answer and counterclaim, and that it be allowed to participate fully in responding to Powerball's motion for preliminary injunction and for a writ of attachment.

DATED this 29th day of October, 2002.

                              STOEL RIVES LLP

                              _____
                              Kenneth B. Black
                              David L. Mortensen
                              Attorneys for Generation Capital Associates, L.P.

## CERTIFICATE OF SERVICE

I hereby certify on this 29th day of October, 2002, that I caused a true and correct copy of the attached MEMORANDUM IN SUPPORT OF GENERATION CAPITAL ASSOCIATES, L.P.'S MOTION TO INTERVENE AS OF RIGHT OR, IN THE ALTERNATIVE, FOR PERMISSIVE INTERVENTION to be faxed and mailed via first class mail to:

Dennis J. Conroy
Spencer Siebers
Silvester & Conroy, L.C.
230 South 5th East, Suite 590
Salt Lake City, Utah 84102
Fax: (801) 532-2270

Mark W. Pugsley
Ray Quinney & Nebeker
P.O. Box 45385
36 South State Street, Suite 400
Salt Lake City, Utah 84111
Fax: (801) 532-7543

*[signature]*